## LORBACH v. MYERS.

Ohio Appeals, 4th Dist., Pike Co.

Decided Apr. 26, 1928.

First Publication of This Opinion.

Syllabus by Editorial Staff.

997. REAL ESTATE—367. Deeds—32. Administrators—851. Notice & Knowledge.

When purchaser of real estate, in tracing his title, comes to administrator's deed he can not rely exclusively upon its recitals, but is required to ascertain nature and extent of administrator's powers and particularly power of administrator to make conveyance upon which reliance was placed. Purchaser is charged with constructive notice of everything material in deeds which form direct chain and also in collateral deed to which reference is therein made.

Heard on appeal.

Decree for plaintiff.

C. M. Caldwell, Waverly, for Lorbach.
Levi B. Moore, Waverly, and Earl D. Parker, Morgantown, for Myers.

### STATEMENT OF FACTS

The plaintiff as the owner of part of lots 104 and 105 in the Village of Waverly seeks to enjoin the defendant from obstructing a private way or easement claimed by the plaintiff over land owned by the defendant. He bases his claim on an easement created by deed and also by prescription. The pertinent facts are these:

James Emmitt, in his life, owned all the land in controversy and much other abutting property. His administrators brought an action in the Probate Court to sell all his real estate, consisting of many tracts, to pay his debts. The appraisers subdivided the tracts of which the properties now owned by the plaintiff and defendant were a part and this subdivision was approved by the court. Thereupon the court ordered sold the property now owned by the plaintiff fronting on Market Street and running back therefrom 103 feet. The property was purchased from the administrators by Phillip Lorbach, Jr., from whom it subsequently passed by inheritance to the plaintiff. The administrator's deed mentioned the property conveyed to the tract numbers fixed by the appraisers in subdividing the estate) and then described it as parts of tracts 11 and 28 (having reference by appropriate limits. The granting clause, after referring to the description, continued:

"together with the privilege to use the roadway named in tract No. twenty-five in said appraisers return described, said roadway being in the rear of and adjoining the premises herein described."

There is no dispute that the roadway thus referred to was over lands belonging to the Emmitt estate, and it is clear to us that the roadway referred to was to run parallel to Market Street over a part of lot 104 to North Street. At the time of the sale the report of the appraisers, duly confirmed, was on record in the Probate Court in the same proceeding under which Lorbach bought and this appraisement showed the creation of the easement appurtenant to tract 25. In 1897 the administrators sold to Huffman and Breece, among other tracts, a part of tract 25 and in that deed there appears this language:

"Allowing a roadway 12 feet wide on lot 104, at rear of old store room and building

now occupied by Armbruster and Lorbach."

It may be fairly assumed that the administrators thought that the land described in this Huffman and Breece deed abutted on the land sold to Lorbach and that the language quoted was intended to attach to the Hoffman and Breece land the easement referred to in the Lorbach deed. This suggests itself because no other explanation appears for the failure to appraise and sell the fee to the 12 foot strip that actually intervened between the two tracts mentioned. The only other explanation is that this language was to give to Huffman and Breece an easement in the 12 foot strip similar to that contemplated for Lorbach's benefit. In 1899 the surviving administrator discovered that the fee to the 12 foot strip was still in the estate. He thereupon secured an order of appraisement and sale for that strip and sold the same to the predecessors in title of this defendant, making no reference in either the writ of appraisement, order of sale or deed to any easement thereon. These orders of appraisement and sale were issued in the same case, under the same pleadings and by virtue of the same processes that had been used to effect the sale to Lorbach.

MAUCK, J.

"Under these circumstances it is clear that Lorbach paid for and thought that he was securing not only the fee to the property described but an easement over other abutting property giving him access to the rear of the property from the public street. This is a valuable right and deserving of protection if its protection is not prevented by the superior rights of others.

The only question that is open is whether or not the defendant, the present owner of the fee, had notice when he purchased the 12 foot strip that the same was burdened by the right of the plaintiff to pass thereover from the street to the rear of the Lorbach property.

His immediate deed gave him no such notice nor did any of the preceding conveyances back to and including the administrator's deed. However, when in tracing his title he came to the administrator's deed he could not rely exclusively upon its recitals. Another rule then intervened. This required him to ascertain the nature and extent of the administrator's powers and particularly the power of the administrator to make the conveyance upon which reliance was placed.

**Thompson on Real Property, Section 2718,** speaking of one holding through a judicial sale says:

"He is charged with notice of such material facts as the record of the proceedings under which he derives title discloses and he will be presumed to have examined the same before becoming a purchaser."

Elsewhere it is said:

"Furthermore, the purchaser at a judicial sale is charged with notice of all material facts relating to the condition of the property or the title to be acquired that are disclosed upon the face of the pleading and **record of the proceedings in which the sale was had.**

**16 Ruling Case Law, 140.**"

The defendant in this case, if he had undertaken to trace the title to its source, would have found that the Emmitt estate owned lot 104 and that the 12 foot strip was a part of that lot. He would have learned that in the appraisement this particular strip was impressed with an easement for the benefit of other lots.

He could have seen that the part of the same lot 104 conveyed to Huffman and Breece "allowed" a 12 foot roadway on that lot to the rear of the store room, and this would have been sufficient warning for him to ascertain to whom this roadway had been conveyed.

"Not only is a purchaser thus charged with a constructive notice of everything material in the deeds which form the direct chain through which his title is deduced, but if any of these conveyances should contain a recital of or reference to another deed otherwise collateral, and not a part of the direct series, he would by means of such recital or reference have notice of this collateral instrument, of all its contents, and of all the facts indicated by it which might be ascertained through an inquiry prosecuted with reasonable diligence."

     **Pomeroy's Equity, Section 628."**

Both the parties hereto have substantial rights. The plaintiff's rights are the oldest in point of time. He paid for the easement and secured its recital in his deed. The defendant and his predecessors likewise paid for the 12 foot strip in ignorance of the easement. They could have protected themselves by an inspection of the proceedings under which they hold. As between the two the rules of equity favor the plaintiff.

Thomas, J., concurs.

Middleton, PJ., not sitting.